[Crim. No. 2178. First Dist., Div. Two. Sept. 3, 1941.]

THE PEOPLE, Respondent, v. CHARLES CAMPANELLA, Appellant.

Bernard Nugent and Daniel F. Hogan for Appellant.

Earl Warren, Attorney General, and David K. Lener and Dennis Hession, Deputies Attorney General, for Respondent.

NOURSE, P. J.—The defendant went on trial to a jury upon an information charging murder and was found guilty of the crime of manslaughter. His motion for a new trial was denied, and this appeal is taken from the judgment on the verdict and from the order denying a new trial.

A former conviction of the defendant of murder in the second degree was before this court on appeal, and the conviction was reversed because of errors in instructions, particularly those relating to defendant's plea that the homicide was committed in self-defense. (*People* v. *Campanella,* 39 Cal. App. (2d) 384 [103 Pac. (2d) 193].) Upon the second trial the defendant declined to take the stand in his defense and for this reason there is a marked and material difference in the two transcripts on appeal—particularly in respect to the evidence tending to support defendant's plea which, on the former appeal, came principally from his own testimony of the events leading to the homicide. On this appeal it should be borne in mind that we must confine our review to the evidence found in the transcript of this record, and we are not permitted to indulge in counsel's explanations and colorful elaborations of this record from the stories told on the previous trial, nor are we permitted to treat as evidence in this case portions of the transcript of evidence of a proceeding in the municipal court which were read to a witness for the purpose of refreshing his recollection and not put in evidence.

Our record discloses that the defendant was living in the apartment of Mrs. Hattie Jensen, the estranged wife of the deceased. Three children of Mrs. Jensen, two sons aged fourteen and eleven by a previous marriage, and a daughter by a still previous marriage, were living in the same apartment. The defendant helped care for the two boys when the mother was away from the apartment and

did some work about the place to help Mrs. Jensen. The Jensens had been separated for about fourteen months, but were on friendly terms, seeing each other all the time, usually at the home of the deceased. On the day of the homicide Mrs. Jensen had planned to go to her husband's home for dinner, but she came to her own apartment at about 5:30 p. m. to make arrangements for her children's meal. A few minutes prior to that time her husband had come to the apartment and found the defendant sitting in the living room with the eleven year old son of Mrs. Jensen. He called to the boy to go back to the kitchen with him and there asked who the strange man was. The boy told him that he was living there and helping his mother. The deceased, who was drunk at the time, became very angry and returned to the living room where he and the defendant had some altercation. At this time Mrs. Jensen came in and saw the defendant seated in a chair and the deceased leaning over him with one hand on each arm of the chair. She called to her husband: "Jim, come in here. I want to talk to you." Her husband preceded her to the kitchen where she told him that he should leave and go to his own home. The deceased answered: "Before I let that Dago son of a bitch get you I will kill him." Mrs. Jensen started to remove her coat and the deceased left her to return to the living room. A period of about four minutes elapsed while the two were in the kitchen and when Mrs. Jensen had removed her coat she immediately followed her husband to the living room. There she saw the two men scuffling in the middle of the room; the deceased had a hold on both of the defendant's wrists extending his arms upward. The defendant had a pocket knife in one of his hands. She called "Jim" and the men broke away. The deceased was vomiting blood from four knife wounds all of which produced a hemorrhage from which he died before help could be summoned. The defendant admitted that he inflicted the wounds. There is no evidence that the deceased carried or used any kind of weapon, no evidence that he struck or threatened the defendant in any way other than the evidence relating to what was said in the kitchen.

Upon this evidence the jury found the appellant guilty of manslaughter. His first point on the appeal is that the verdict is contrary to and unsupported by the evidence. A former jury had found appellant guilty of murder in the

second degree. Two trial judges denied his motions for a new trial. Immediately following the death of deceased the appellant stated to the ambulance attendant that he had killed the deceased. He did not take the witness stand in his own defense; hence, there is no evidence of what occurred between the two men between the time when the deceased returned to the living room and the time when Mrs. Jensen saw the deceased bleeding from his wounds. The presumption of innocence of the homicide was dispelled by the direct admission of the appellant that he had stabbed the deceased with his knife. The single question then left to the jury was whether the killing was excusable or justifiable or such as to constitute the crime of manslaughter rather than that of murder. This of course was a plain matter of defense. Whether the burden of proof was upon the prosecution or upon the appellant is not pertinent at this time. The controlling matter is that proof that the admitted killing was either justifiable or excusable went directly to an issue of fact, and such proof could be made in precisely the same manner that an ordinary issue of fact may be proved in either a civil or a criminal case. Thus, in the absence of any explanation of his conduct, the appellant, having been charged with murder, must be presumed to have intended "the ordinary consequences of his voluntary act," and this presumption taken with the evidence that he had ample time and opportunity to avoid the encounter, would support an inference by the jury that the appellant did nothing to avoid it, but that he voluntarily lay in wait for the deceased with the intention of inflicting upon him bodily harm. (*People* v. *Jones,* 160 Cal. 358, 370, 371 [117 Pac. 176].) ▮ Upon an appeal of this character this court must assume in support of the judgment that the jury accepted whatever presumption or inference may be necessary to support the verdict. This is so because section 1096 of the Penal Code declares that "the effect of this presumption (of innocence) is only to place upon the state the burden of proving him guilty beyond a reasonable doubt." ▮ When, therefore, a defendant is charged with murder and admits the fact which is the body of the crime charged, the question whether his act was justifiable or excusable depends wholly upon the intent with which the act was committed—and in such a

case the natural presumption is that he intended death or great bodily harm. (*People* v. *Jones, supra.*) With this presumption and the reasonable inference that appellant voluntarily lay in wait and attacked the deceased in anger because of the vile epithets he had heard from the deceased, the evidence as a whole was sufficient to support a verdict of murder. Under the accepted rule announced in section 1159 of the Penal Code the conviction of the lesser offense of manslaughter was proper and is fully supported by the evidence.

 Appellant's second ground of attack is thus stated: "The proof on the part of the prosecution tended to show that the offense if any amounted to manslaughter and not murder, therefore the burden of proof remained with the prosecution to show that the defendant *did not* kill deceased in self-defense. This the prosecution failed to do." Though we should concede the statement, it is no ground for reversal. Appellant relies upon section 1105 of the Penal Code which reads: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." The effect of the section is to relieve the prosecution, in cases of murder alone, of the burden of proving malice and wilful intent. (*People* v. *Jones, supra.*) The last portion of the section merely leaves the burden on the prosecution of proving manslaughter "beyond a reasonable doubt." But, when, as here, the killing is admitted and the evidence is sufficient to prove murder the prosecution has no greater burden than if the original charge was manslaughter—the burden of proving the essential elements beyond a reasonable doubt. In the absence of the testimony of the appellant which was before us on the former hearing, the record discloses nothing more than that the appellant attacked the deceased with a dangerous weapon, while the deceased was wholly unarmed, immediately after the deceased had uttered some vile epithets and threats regarding the appellant. It disclosed that the killing was the result of a "sudden quarrel or heat of passion." (Penal Code, section 192.) It disclosed that it was not "committed by acci-

dent and misfortune'' and that if it were committed ''in the heat of passion . . . or upon a sudden combat'' it was accomplished by an undue advantage taken and with the use of a dangerous weapon. (Penal Code, section 195.) It disclosed that, if the defendant believed that it was necessary to commit the act in defense of his person, or his habitation, he did not in good faith endeavor ''to decline any further struggle before the homicide was committed.'' (Penal Code, section 197.) To the contrary the evidence discloses that the appellant attacked the deceased with a dangerous weapon while the latter was unarmed and in a drunken condition, that he made no attempt to retreat, or to avoid the combat; but that he apparently lay in wait for the deceased for the express purpose of committing the homicide. The trial court properly charged the jury on the question of reasonable doubt, the presumption of innocence, and the essential elements of the offense, as well as upon the essential elements of the plea of self-defense, and we must assume on this appeal that the jury followed those instructions.

The appellant complains of the rulings of the trial court upon his objections to questions tending to show that he had ample means to have avoided the combat and made no effort to do so. If, under section 1105 of the Penal Code, the burden is on the prosecution to prove that the killing was not justifiable or excusable, evidence of this character tending to show that the appellant sought the combat is admissible as a part of the state's case. The whole subject matter was fully covered by the instructions given on the issue of self-defense and there can be no implication, from the admission of the evidence alone, that the trial court assumed a position unfavorable to the appellant upon that issue.

Finally the appellant complains of the refusal to give one of his proposed instructions relating to the plea of self-defense. The proposed instruction was incomplete and confusing. The whole subject of the plea of self-defense was covered by elaborate instructions running from page 115 to page 119 of the transcript and the jury was told that ''The burden is upon the prosecution to show that the homicide was not done in self-defense and therefore if you entertain a reasonable doubt as to whether the homicide was lawful

or unlawful, if you entertain a reasonable doubt that the killing was done in self-defense you must find the defendant not guilty." The proposed instruction was refused because the subject matter was fully covered in these other instructions. There is no error here.

The judgment and order are affirmed.

Sturtevant, J., and Spence, J., concurred.