[Crim. No. 5328. Second Dist., Div. Three. Oct. 10, 1955.]

THE PEOPLE, Respondent, v. LOUIS SAMUEL CARR, Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged with murder. In a trial by jury he was convicted of manslaughter. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to support the judgment; and that the court erred in rulings regarding admissibility of evidence.

On February 27, 1954, about 10:30 p. m., Charles Williams had a telephone conversation with appellant's wife (referred to as Ruby). During the conversation the appellant heard Ruby ask the person with whom she was talking to take her out that evening. About 11 p. m., Ruby told appellant that she was going to use the family automobile. Appellant stated that if she was going out he would go with her. He followed her to the automobile and she then started walking down the street. Appellant entered the automobile and drove to where she was walking but she refused to get into the automobile. When appellant came to the intersection a Cadillac automobile, apparently traveling in the opposite direction, passed him. Appellant recognized Williams as the driver of the Cadillac. Appellant made a U-turn and saw the Cadillac turn a corner. According to his testimony, Ruby was not in sight; appellant thought she had entered the Cadillac; he returned home and worked on books, which he used in night school, until approximately 1 a. m.; about 1:30 a. m. the telephone rang, and the caller stated that she was Mrs. Williams and that Ruby was out with Williams; about 2 a. m he got a gun from the bedroom, loaded the gun and put it in a drawer in the entrance hall; he then sat on a couch in the entrance hall and went to sleep; he awoke about 3 a. m. and discovered that Ruby had not come home; he sat in the entrance hall until approximately 3:30 a. m., when he saw a Cadillac automobile passing the house; he opened the door and saw it stop four or five "doors" from his house; he went to the drawer, took the gun, put it in his pocket and walked down the street toward the Cadillac; he saw "them kissing," and then Ruby got out of the automo-

bile; as appellant started to go around to the driver's side of the automobile, Williams "backed up and started to pull away"; appellant yelled "Wait, I want to talk to you," and reached for the door; Williams "gunned the car" and did not stop; appellant then fired the gun; the automobile went across the street, into a fence and stopped; appellant had no recollection of taking the gun from his pocket or of firing it. The bullet entered the left temple of Williams and he died as a result of the wound.

An officer, called as a witness by the People, testified that he arrived at the scene of the shooting about 3:45 a. m. He arrested appellant, and had a conversation with him in his residence and on the sidewalk in front of his residence. Appellant told him, in that conversation, that about 10 p. m. Ruby received a call from Williams; about 11 p. m. she started to leave and refused to let appellant go with her; appellant saw her enter Williams' automobile; he (appellant) then did some homework; about 2 a. m., he loaded the gun and placed it in his pocket; he then went to the front door of his residence where he stood and watched for Ruby and Williams to return; when he saw the automobile stop down the street, he walked toward it and Ruby got out; appellant approached the automobile on the driver's side; the automobile started to move forward and then appellant hollered "Wait a minute, I want to talk to you"; the automobile was then accelerated very fast; when appellant saw that Williams was going to ignore him, it made appellant mad and he took the gun out of his pocket and fired at Williams.

In a conversation at the police station, which conversation was recorded on a plastic record, appellant repeated in substance the above statements which he made to the officer. He stated further therein that at the time he fired the shot he did not know that the man in the automobile was Williams—that his (appellant's) reason for staying up was to see who the man was (who was with Ruby); he fired the gun at random; he took the gun from the bedroom because there were two men in the automobile when Ruby entered it, and he felt that he would need some protection.

In support of his contention that the evidence was insufficient to support the judgment, appellant argues that the shooting was an accident and that there was no evidence of an intent to kill. Section 21 of the Penal Code provides, in part, that: "The intent or intention is manifested by the circumstances connected with the offense, and the sound mind

and discretion of the accused. . . ." ■ The circumstances connected with the offense herein were ample to support a finding that appellant intended to kill Williams. According to appellant's testimony, he loaded the gun about three hours after Ruby left with Williams, took it into the entrance hall and then waited there about one and one-half hours for them to return, while waiting he slept about an hour, when he saw the Cadillac stop down the street, he took the loaded gun from the drawer in the entrance hall, walked to the automobile and, as Williams attempted to drive away, shot him. According to the officer's testimony, appellant stated that he shot Williams because, when Williams ignored him, it made appellant mad. In *People* v. *Campanella,* 46 Cal.App.2d 697 [116 P.2d 633], defendant was charged with murder and found guilty of manslaughter. On appeal therein he contended that the verdict was not supported by the evidence. It was stated therein, at pages 701-702, that when "a defendant is charged with murder and admits the fact which is the body of the crime charged, the question whether his act was justifiable or excusable depends wholly upon the intent with which the act was committed—and in such a case the natural presumption is that he intended death or great bodily harm. [Citation.] With this presumption and the reasonable inference that appellant voluntarily lay in wait and attacked the deceased in anger . . . the evidence as a whole was sufficient to support a verdict of murder." The evidence in the present case was sufficient to support the verdict and judgment of manslaughter.

■ As to appellant's contention that the court erred in rulings regarding admissibility of evidence, he asserts that the People introduced in evidence part of a conversation between appellant and the officer who arrested him, and that thereafter appellant was not permitted to introduce the entire conversation. On direct examination, as above shown, the officer testified regarding a conversation he had with appellant at appellant's residence. On cross-examination of the officer, counsel for appellant asked questions regarding a further conversation which the officer had with appellant about 45 minutes later in an automobile while going from the scene of the shooting to the police station. Upon objection to the questions by the deputy district attorney, counsel for appellant made an offer of proof and argued that the conversation in the automobile was an explanation of the conversation at appellant's residence, and that the two conversations were so

interwoven that they were "one running conversation." The court then made a statement to the effect that it appeared that the two conversations were unrelated. Thereafter counsel for appellant argued that the second conversation was so close to the first conversation that it was a part of the res gestae, and that the second conversation was important to show appellant's state of mind at the time. The court then stated "It could be," and "All right you may proceed." Thereupon counsel for appellant, in further cross-examination of the officer, established that the second conversation related to the first conversation. Said counsel then, without objection, interrogated the officer regarding statements allegedly made by appellant during the second conversation. Said questions pertained to all matters which were included in the offer of proof except as to appellant's honorable discharge from the Army, and matters already in evidence. Such questions related to appellant's employment, whether he saw Ruby and Williams embrace on the night of the shooting, whether he had warned Williams at Christmastime not to come to his house, and whether he suspected Ruby had been going out for several years. It therefore appears, contrary to the representations in appellant's brief, that appellant was not restricted in the cross-examination of the officer regarding the second conversation. The misleading presentation of this point in appellant's brief is inexcusable. There is no merit to this contention.

The judgment, and order denying the motion for a new trial, are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied October 25, 1955.