[No. B050616. Second Dist., Div. Seven. July 18, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALVARADO, Defendant and Appellant.

502

## COUNSEL

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, and Patrick T. Brooks, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Defendant was convicted by a jury of second degree murder. He seeks reversal based on alleged instructional errors and abuse of discretion in admitting photographs of the victim's corpse. We find no merit in these arguments and, therefore, affirm the conviction.

### FACTS

Defendant and the victim, apparently, were members of rival gangs. At about 11:30 one night defendant found the victim on defendant's turf. He chased him into the restroom of a restaurant and stabbed the victim five times. The fatal blow was a stab to the victim's head which penetrated his skull and brain.

A witness for the defense, Ms. Lopez, testified on the day of the killing defendant and her brother brought a 12-pack of beer over to her house at about 10 or 10:30 in the morning. They consumed that 12-pack and, in the early afternoon of the same day, they bought and drank another 12-pack. Ms. Lopez further testified that when defendant left her house at approximately 5 p.m. he was drunk but walking "very well." Ms. Lopez next saw defendant

at approximately 2 a.m. the next morning. He seemed to her to be in the same condition as when he left the previous afternoon.

There was no evidence as to how many of the 24 cans of beer consumed at Ms. Lopez's house were downed by defendant or whether he had drunk any intoxicants between 5 p.m. and 2 a.m.

## DISCUSSION

### I. THE TRIAL COURT PROPERLY INSTRUCTED THE JURY ON THE EFFECT OF PROOF OF DEFENDANT'S INTOXICATION ON THE QUESTION OF MALICE.

The trial court gave the jury the following version of CALJIC No. 4.21: "In the crime of murder of which the defendant is accused in count 1 of the information, a necessary element is the existence in the mind of the defendant of the mental state of malice aforethought. If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether defendant had such mental state. If from all the evidence you have a reasonable doubt whether the defendant formed such mental state, you must find that he did not have such mental state. . . ."

Defendant contends the court erred in not instructing the jury, sua sponte, that if the evidence showed the defendant was intoxicated the jury should consider that fact in determining whether defendant had a specific intent to kill. Defendant bases this argument on a statement in *People* v. *Ricardi* (1990) 221 Cal.App.3d 249, 256 [270 Cal.Rptr. 425] that "murder is a 'specific intent' crime to which voluntary intoxication is a defense." As we explain below, defendant misconstrues the relationship between specific intent and malice aforethought in the crime of murder. Defendant also misconstrues the reasoning and holding in *Ricardi*.

■ Although murder is a "specific intent" crime, the specific intent to kill is not an independent element of the crime. "Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) Malice may be express or implied. "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other

mental state need be shown to establish the mental state of malice aforethought." (Pen. Code, § 188.)[1]

The concept of specific intent relates to murder in two ways. The specific intent to *kill* is a necessary element to first degree murder based on a "willful, deliberate, and premeditated killing." (Pen. Code, § 189; *People* v. *Gorshen* (1959) 51 Cal.2d 716, 732 [336 P.2d 492].)[2] Also, the specific intent to *kill* is necessary to establish express malice. (See Pen. Code, § 188: "[Malice] is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.") However, specific intent to kill is *not* a necessary element of second degree murder (*People* v. *Scott* (1982) 129 Cal.App.3d 301, 312 [180 Cal.Rptr. 891]), nor is it necessary to establish malice. Malice may be established by showing the specific intent to commit an act from which malice may be implied. (*People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1245 [278 Cal.Rptr. 640, 805 P.2d 899]; *People* v. *Dellinger* (1989) 49 Cal.3d 1212, 1222 [264 Cal.Rptr. 841, 783 P.2d 200]; *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 526 [42 Cal.Rptr. 838, 399 P.2d 374].)

In *Pensinger*, the court approved an instruction which told the jury it could find only second degree murder if it found an unlawful killing " 'as a direct causal result of an intentional act involving a high degree of probability that it will result in death, which act is done for a base antisocial purpose and with wanton disregard for human life.' " (52 Cal.3d at p. 1245.)

In *Dellinger*, the court approved the implied malice instruction given in the case before us and found "the evidence introduced below overwhelmingly established the element of implied malice necessary to support defendant's conviction of second degree murder." (49 Cal.3d at p. 1222.)

■ In the present case defendant slew the victim with a knife stab to the head which penetrated the victim's skull and brain. Thus, this case falls within the rule applied in cases such as *Jackson* v. *Superior Court, supra*, 62

---

[1]The trial court gave the jury the following instruction on malice aforethought, CALJIC No. 8.11:

"Malice may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act. [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought. . . ."

[2]In the present case the jury was properly instructed under CALJIC No. 8.20, "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation . . . it is murder of the first degree."

Cal.2d at page 526: " 'When it is proved that defendant assaulted decedent with a dangerous weapon in a manner endangering life and resulting in death and the jury concludes that the evidence did not create in their minds a reasonable doubt whether defendant's act may have been justified or its criminal character mitigated by the influence of passion (e.g., of terror, *People* v. *Logan* 175 Cal. 45, 48, 49 . . . ) then no further proof of malice or of intent to kill is required to support a verdict of guilty of second degree murder. Of that crime an actual intent to kill is not a necessary component and malice is implied from such assault in the absence of justifying or mitigating circumstances.' " (Quoting from *People* v. *Torres* (1949) 94 Cal.App.2d 146, 149-150 [210 P.2d 324].)

The case of *People* v. *Ricardi, supra,* relied upon by defendant, correctly observes murder is a specific intent crime. It does *not* say the defendant must be found to have had a specific intent to *kill.* In *Ricardi,* the trial court refused to give the voluntary intoxication instruction, CALJIC No. 4.21, which was given in the present case, and the issue was whether that instruction was required in the context of a second degree drunk driving murder prosecution. (221 Cal.App.3d at p. 255.) In holding the voluntary intoxication instruction was required, the court reasoned: "The applicable statutes are Penal Code sections 22 and 187. (Fn. omitted.) Section 187 provides in pertinent part that '[m]urder is the unlawful killing of a human being . . . with malice aforethought.' Section 22, subdivision (b) provides that '[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.' Sections 22 and 187 indicate that murder is a 'specific intent' crime to which voluntary intoxication is a defense. They make no exception for murder in circumstances that would support a finding of implied malice (§ 188), even where those circumstances include drunk driving (see *People* v. *Watson* (1981) 30 Cal.3d 290 . . .). Although we will proceed to examine other authorities, we must ultimately conclude that these statutes are dispositive." (221 Cal.App.3d at p. 256.) The opinion concludes with the court's observation the failure to give the voluntary intoxication instruction was error because "the present rule in this jurisdiction is that voluntary intoxication may negate *the malice aforethought required for murder.*" (*Id.* at p. 261, italics added.) This is precisely what the jury was told in the case before us.

For the reasons set forth above, the jury was properly instructed as to the murder allegation.

Defendant also complains about the trial court's instruction on involuntary manslaughter which instructed the jury in the words of CALJIC No. 8.47, "If

you find that defendant, while unconscious as a result of voluntary intoxication, killed another human being without intent to kill and without malice aforethought, the crime is involuntary manslaughter."

Defendant contends it was error to give this instruction because there was no evidence the defendant was intoxicated to the state of unconsciousness. By giving this instruction the court further compounded the error in failing to instruct on the effect of intoxication on intent to kill.

However, as defendant concedes in his reply brief, any error in the involuntary manslaughter instruction was invited because defendant requested that instruction. Furthermore, as we explained above, the trial court did not err in its instruction on intoxication.

II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING PHOTOGRAPHS OF THE VICTIM'S CORPSE.

■ The trial court's decision to admit photographs of the victim's injuries will not be disturbed on appeal unless the prejudicial effect clearly outweighs the photographs' probative value. (*People* v. *Wright* (1990) 52 Cal.3d 367, 434 [276 Cal.Rptr. 731, 802 P.2d 221].) Although the probative value of victim photographs sometimes appears tentative at best, here the record shows the trial court gave careful consideration to the admission of the photographs excluding one which the court found of minimal probative value but highly inflammatory. The remaining photographs were admitted because they showed where the stab wounds were inflicted making them relevant to the issue of malice. (*People* v. *Toth* (1960) 182 Cal.App.2d 819, 826 [6 Cal.Rptr. 372].)

We find no abuse of discretion admitting the photographs.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.