[Crim. No. 463.   Second Appellate District.—June 14, 1916.]

THE PEOPLE, Respondent, v. MASON BRADFIELD, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO MURDER—PRIOR THREATS—
   INSTRUCTION.—In a prosecution for the crime of assault with a deadly weapon with the intent to murder, the following instruction is not made erroneous by the modification embodied in the phrase and word shown in parentheses, to wit: "One who has received information of threats against his life or person made by another, is justified in acting more quickly and taking harsher measures for his own protection in event of assault, either actual or threatened, than would be a person who had not received such threats; and if in this case you believe from the evidence (that the prosecuting witness made threats against the defendant and) that the defendant, because of (such) threats made previously to the transaction complained of by the prosecuting witness and communicated to the defendant either by the prosecuting witness or some other person,

   30 Cal. App.—46

had reasonable cause to fear greater peril in event of an altercation with the prosecuting witness than he would have otherwise, you are to take such facts and circumstances into your consideration in determining whether defendant acted in a manner in which a reasonable man would act in protecting his own life or bodily safety."

ID.—EVIDENCE OF PREVIOUS DIFFICULTIES—CONSIDERATION BY JURY—PROPER INSTRUCTION.—An instruction that the jury might consider the evidence of previous difficulties between the parties for the purpose of determining their state of mind at the time of the assault, as well as for the purpose of showing malice, is not erroneous.

ID.—JUSTIFICATION OF ATTACK—PROPER INSTRUCTION.—An instruction that "to justify a person for attempting to kill another man upon the ground of self-defense, the attempt must be made under well-founded belief that it was absolutely necessary for such person to kill the other at the time to save himself from great bodily harm. The danger or harm must be present, apparent and imminent," properly states that the person acting in self-defense and resorting to the use of a deadly weapon must believe that it is absolutely necessary for him to so act in order to justify under the law.

APPEAL from a judgment of the Superior Court of Ventura County, and from an order denying a new trial. Merle J. Rogers, Judge.

The facts are stated in the opinion of the court.

Earl Rogers, Veitch & Richardson, E. E. Moss, O. G. Kulinski, and Milton M. Cohn, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

JAMES, J.—The defendant was charged by the information of the district attorney with having, on the first day of July, 1915, committed an assault with a deadly weapon with the intent to murder George J. Henley. The jury by its verdict convicted the defendant of the crime of assault with a deadly weapon only. This appeal is taken from the judgment of the court which followed, and from an order denying the defendant's motion for a new trial.

The alleged assault occurred in the daytime on a street in the town of Fillmore, Ventura County. The complainant Henley occupied a tract of land in a canyon near Fillmore, across which and leading to more remote sections of the mountains was a road. This road was located on the ground

which Henley claimed to own, and he objected to persons traveling over it without first paying for the privilege. A corporation of which defendant was manager or superintendent was operating either for water or oil at a point above the Henley place. In order to reach the land of the corporation it was necessary, or at least desirable, to travel over the Henley road. Henley objecting, a suit was brought and finally a stipulation was made by which the right to travel upon this road was conceded to the corporation. Henley either raised some question about this right so conferred, later, or at least insisted that the privilege granted be strictly construed as not allowing the corporation or its agents upon any portion of the ground claimed by him outside of the roadway. While Henley and the appellant had been friends in former years, this dispute over the right to use the road engendered some bad feeling. According to the claim of appellant, which is given color by the evidence, Henley attributed to Bradfield all of the difficulty which he had had with the corporation which was under the management of Bradfield. At a time about three years prior to the occasion of the assault, Henley met Bradfield as the latter was traveling down the canyon on the road, and his attitude at that time was abusive and threatening. However, he made no attack upon Bradfield and showed no weapons. On this occasion, Bradfield testified, while he was engaged with his parley with Henley he glanced over by a building and there saw Mrs. Henley armed with a double-barreled shotgun, which was leveled in his direction. Bradfield testified that he walked about so as to keep Henley between him and the gun until a man named Snow drove down, when he (Bradfield) left the canyon, to which he had never returned. The corporation, however, through their agents and under the direction of Bradfield, had continued to prosecute some work on its property above the Henley place. As before mentioned, this wordy encounter took place three years prior to the date when the alleged assault was committed. On the first day of July, 1915, Henley came to the town of Fillmore to transact some business. He testified that he went to the office of the justice of the peace to look up the question of his rights regarding trespassers on his property, and later walked up the street; that in front of a real estate office, where Bradfield's company had its headquarters, he saw Bradfield; that Bradfield bowed and that Henley returned

the salutation; that Bradfield then came toward him; that he (Henley) stopped, thinking that Bradfield wanted to talk with him, and that he addressed Bradfield, asking him how he was getting along and where he was surveying at that time. Henley testified that he noticed some expression passing over the face of Bradfield and that he ran his eyes up and down the form of the latter; that he noticed a motion and as he raised his eyes he found that he was looking into a gun which Bradfield held aimed at him; that the next expression of Bradfield was, "Are you heeled?" that he (Henley) turned and said "No," and that as he turned he bowed his head, thinking that he was to receive a shot; that one shot was fired, striking him back of the shoulder, and then after a little intermission two more shots were fired, both of which took effect in his back; that he had started to go away as soon as he saw the gun in the hand of Bradfield, but that as he swung around and started, all of the shots had been fired. Henley testified that he was totally unarmed, except for a pocket-knife which was in his pocket, and none of the several witnesses who were almost immediately at the scene of the shooting saw any weapon, although Bradfield, the defendant, made the claim that Henley was carrying a gun. Henley, after being shot, staggered down the street some little distance and then fell to the ground from loss of blood. He was immediately picked up and attended by a physician. This physician testified that he found two wounds of entrance in the man's back; one bullet had entered at an oblique angle at about the center of the left shoulder-blade and proceeded across the man's back under the skin and lodged at some point over the right shoulder-blade. Another bullet had entered at the lower tip of the right shoulder-blade, had progressed to the right and around the man's body, and come out in front. A number of blood vessels were severed by the bullet which occasioned this last wound and profuse bleeding resulted. What appears to have been the first bullet fired did not enter the body of Henley, but passed through his clothing at the back from left to right. The appellant in giving his version of the shooting testified that on the day in question Henley passed his office several times and motioned for him (Bradfield) to come out; that being busy he paid no attention at first, but upon the second or third time that Henley passed he did go out and speak to him; that Henley asked him why he did

not come up into the canyon any more, and upon his replying that he had no occasion to, that he could have what he needed done by others, Henley had cursed him and told him he was afraid to go into the canyon; that Henley had made some motion which disclosed to the view of appellant the butt of a revolver in Henley's pocket; that appellant, knowing of Henley's proficiency both in the handling of a gun and knife, considered that he was about to be attacked, and drew his own weapon and fired. He testified that he fired three shots in rapid succession, aiming· at the right shoulder-blade of Henley, with the idea of "crippling" him only. He did not contend that Henley had actually drawn a revolver, and at one point in his testimony said Henley reached for a gun, and at another point said that he was "looking for a knife from him." When asked as to whether he saw the revolver of Henley again that day, he said that he thought that he saw one of the witnesses who testified in the case take the gun from Henley after the latter had staggered away down the street. The witness referred to gave no testimony as to finding any gun upon or in the hands of Henley. Of course, it is enough to say that wherever there was a conflict of testimony the jury had the right to exclusively judge as to the fact. There was a great deal of testimony admitted touching the statements made by Henley to various persons respecting his rights in the canyon and his hostile feeling toward those who contended for the privilege of passing over his property. This testimony was introduced as tending to show ground for a reasonable fear in the mind of the appellant that at the time of the alleged assault he believed his life to be in danger, or that he was likely to suffer great bodily injury at the hands of Henley. Counsel for appellant at great length argues that the trial judge committed error prejudicial to the defendant when he struck out certain testimony of Bradfield, and in the giving of an instruction touching the question of prior threats when made by a person who is afterward injured at the hands of the one threatened. Bradfield testified that the man Snow, who had approached at the time of his wordy encounter with Henley in the canyon three years prior to the shooting, had talked to him about that occurrence. The record shows that the matter was presented in this way,. Bradfield being on the witness-stand: "Q. Subsequently did Snow have a conversation in which he purported to tell you

the statements made by Mr. Henley respecting you and what should have or would have happened to you on that particular morning? A. Yes; in ten or fifteen days. Q. What did he tell you? A. He told me that Mrs. Henley had told him that George [Henley] had stopped me in the road and gave me a good roast, that I quit and got out of the canyon, and she did not think would ever come back again. Q. Did Mr. Snow tell you whether the Henleys said anything about the gun? A. Yes; she said she had her double-barreled shotgun filled up with pieces of lead pipe. She had whittled them off, and if I had made a move of any kind she would have torn me in two.'' Counsel say that they were entitled to have this' testimony considered by the jury as indicating the character of Henley and the state of mind of appellant at the time of the shooting—as showing reasonable ground for the belief that the latter was about to be attacked when approached by Henley on the first day of July in Fillmore. It will be noted that not a word of this testimony referred to any threat made by Henley. Bradfield testified that he had on the occasion referred to observed the double-barreled shotgun leveled at him by Mrs. Henley, but he made no claim that Henley at that time exhibited any deadly weapon or threatened to use one. Counsel say it is ''hard to realize a woman loading a shotgun with lead clippings,'' and likens the case to that of Kipling's grenadier who held a cocked rifle to the head of a wounded Afghan while the officer gave the injured man a drink of water, in order to prevent the latter man from shooting the officer as one had just done; and he says that Bradfield had the right to follow Mulvaney's example, and take extraordinary precaution against such cruelty as would recommend a woman to load a shotgun with lead clippings. Remembering that the encounter was between Bradfield and Henley, and not Mrs. Henley, the relevancy of testimony showing what Mrs. Henley did or might do is not apparent. We might quote a couplet by the same distinguished author to whom counsel has referred:

> "When Nag, the cobra, hears the careless steps of man,
> He sometimes wriggles sideways to avoid him if he can;
> But his mate makes no such motion as she camps beside the trail,
> For the female of the species is more deadly than the male."

The fact that the trial judge struck out this testimony on the ground that it was hearsay, in that Snow was not pro-

duced, and it was in no wise made to appear that Mrs. Henley had actually made the statements communicated, does not present error of which appellant is entitled to complain, because the testimony, as we view it, was not relevant in the aspect which the case presents.

The court, at the request of defendant, gave the following instruction, with the modification embodied in the phrase and word which we have shown in parentheses: "One who has received information of threats against his life or person made by another, is justified in acting more quickly and taking harsher measures for his own protection in event of assault, either actual or threatened, than would be a person who had not received such threats; and if in this case you believe from the evidence (that the prosecuting witness made threats against the defendant and) that the defendant, because of (such) threats made previously to the transaction complained of by the prosecuting witness and communicated to the defendant either by the prosecuting witness or some other person, had reasonable cause to fear greater peril in event of an altercation with the prosecuting witness than he would have otherwise, you are to take such facts and circumstances into your consideration in determining whether defendant acted in a manner in which a reasonable man would act in protecting his own life or bodily safety." The instruction as modified, when properly analyzed, means nothing more or less than it did in the form in which the appellant presented it to the court. In that form it stated quite clearly that threats such as would furnish ground in the appellant's mind for the belief that his life or person were in danger were those which had been "made previously . . . by the prosecuting witness." Appellant is not entitled to complain of error in an instruction which he himself has prepared and asked the court to present to the jury. An examination of other instructions offered by the defendant shows that in their phraseology it was assumed as a prerequisite that the threats which were communicated had actually been made by the prosecutor. Instruction 26, found in the clerk's transcript, contains language of that meaning. It may be conceded that it is not the law that it must appear that such threats were actually made by the prosecutor, and that it is sufficient that it has been stated to the person who acts thereon that such threats were made and that such statements were believed and

relied upon by the person charged with the assault.    The trial judge allowed to be shown on behalf of the defendant very fully the attitude and disposition of Henley, as manifested by his words and acts touching the question of trespassers upon the property which he claimed to own.    The objections which were sustained to questions tending to further emphasize the disposition of Henley in that regard, we think were in the main properly determined.    The contentions urged in this direction are rather hypercritical, and the argument in support thereof attenuated.

It is complained very earnestly that the court erred in giving this instruction to the jury : "I instruct you that if you believe from the testimony in this cause that said defendant, Mason Bradfield, and the prosecuting witness, George J. Henley, prior to the first day of July, 1915, had certain difficulties and troubles, then, in that event, you are only to consider such testimony for the sole purpose of determining the state of mind of said defendant, Mason Bradfield, and said prosecuting witness, George J. Henley, at the time of the alleged assault, if any there was, and for the further purpose of showing malice, if any, the defendant had at such time." Counsel argue that the evidence of the previous difficulties between Henley and Bradfield was to be considered for the purpose of showing malice in the mind of Henley, the prosecutor.    We make no distinction between the meaning of the expressions contained in the instruction where the court told the jury that such testimony was admissible for the purpose of determining the state of mind of the two men, and had the instruction advised the jury that such testimony should also be considered for the purpose of showing malice of Henley. By the instruction the jury was entitled to view the evidence as indicating whatever it might in the direction of explaining the whole state of mind of the two men.    It was proper, too, to advise that evidence of the difficulties might be considered for the purpose of showing malice, if any, that the defendant had against the complainant, for under the charge as made, to wit, assault with intent to commit murder, malice was a material ingredient.    The jury, however, did not find the defendant guilty of that crime, but convicted him of the lesser offense, which involved no specific malice on his part.

It is also declared that the following instruction misstates the law : "To justify a person for attempting to kill another

upon the ground of self-defense, the attempt must be made under well-founded belief that it was absolutely necessary for such person to kill the other at the time to save himself from great bodily harm. The danger or harm must be present, apparent, and imminent.'' Counsel's whole argument on this proposition is that in proving justification for an attack it need not appear that it was absolutely necessary for the person to resort to the means adopted and kill another. The instruction does not so declare. It does state, and properly, that the person acting in self-defense and resorting to the use of a deadly weapon must believe that it is absolutely necessary for him to so act in order to justify under the law. The jury was not told that it must find as a fact that the necessity did ''absolutely'' exist, but only that defendant so believed. The case of *People* v. *Webster,* 13 Cal. App. 348, [109 Pac. 637], is not contrary in its holding to this conclusion. Examining the whole body of the instructions, we find that the court sedulously and with great care defined to the jury the rights of a person charged with an assault who claims to have acted in self-defense. It was fully explained that the conduct of such person was only such as would be determined by the judgment of a reasonable man, and that he might act upon appearances, and that even though the danger was apparent, and not real, he would be justified.

The main contentions advanced by the appellant in his claim for a reversal have been carefully considered and the evidence, as disclosed by the lengthy transcript, thoroughly examined. We believe that the defendant in this case has been protected by the court in his right to a fair trial, and that the verdict of the jury is fully sustained by the evidence.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 10, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 7, 1916.