Goodell, Acting P. J., and Runnells, J. pro tem., concurred.

[Crim. No. 2592. First Dist., Div. Two. Oct. 14, 1949.]

THE PEOPLE, Respondent, v. JOSEPH VILLAGAS TORRES, Appellant.

Emery J. Delmas and Edward M. Fellows for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn and B. Abbott Goldberg, Deputy Attorneys General, for Respondent.

NOURSE, P. J.—Defendant was charged with the murder of one Gilbert Moreno. He was convicted of murder in the second degree and appeals from the judgment and from an order denying his motion for a new trial.

It is undisputed that on the night of August 14, 1948, defendant inflicted one stab with his knife into the abdomen of Moreno, by which the aorta was pierced and death caused within a short time. The defense was that defendant had acted without intention to kill and that his action was justified as in self-defense.

Defendant and decedent were both farm laborers of Mexican parentage. At the time of the event defendant was 18, decedent 19 years old. The evidence shows that two weeks prior to the event, on July 31, 1948, both had been engaged in a quarrel and fight, which a brother of decedent started with defendant in a dance hall and bar. Friends of both sides took part and one fellow combatant of defendant was knifed. When the fight was broken up decedent threatened in defendant's presence that he would get (or kill) him. Defendant testified that because of this threat combined with the fight and the knifing he was afraid of decedent and began to carry a knife. He knew of the reputation of decedent in the Mexican community as a marijuana user and troublemaker. Other defense witnesses also testified as to such reputation of decedent and his prior use of a knife to wound or threaten.

On the night of the event defendant was at the carnival at San Jose with friends. When he came out of there together with his friends, decedent and some of decedent's friends were waiting outside near the gate. The testimony of the witnesses for the People was conflicting as to whether they were waiting to go into the grounds or to get into a fight with defendant. When defendant had moved to the sidewalk 40 to 50 feet from the gate decedent left his group at the gate and went up to a certain John Lira who was standing near defendant. From that point on there is again a conflict in the evidence. Defendant testified that when decedent was near him decedent challenged him "to finish this out"; that

on defendant's refusal decedent started toward him saying that he was going to kill him; that decedent had his right hand in his trouser pocket and defendant could see part of a knife outside the pocket; that defendant was afraid of what would happen to him; that he took a step forward, threw out his arm, stabbed decedent with the knife held in his hand, withdrew the knife and ran. The defense witnesses Chavez and Naus corroborated this testimony in part. Chavez testified that he heard decedent's challenge and saw him move on defendant with his right hand in his trouser pocket and make a motion with his hand as to take out his knife; the witness did not see a knife. The witness Naus, embalmer, testified that when he performed his duties on decedent's body he found an open knife in decedent's right trouser pocket. However the witness John Lira testified for the People that decedent was standing near him, talking with him and not threatening anybody when defendant, whom the witness had not seen there before, struck decedent with his hand in the stomach; he did not see a knife in decedent's hand. Frank Gonzales, also a witness for the People, testified that he saw decedent go up to John Lira and talk to him and that he saw defendant who was standing there, all of a sudden come up and hit decedent in the stomach. The witness was too far away to hear what was spoken but he did not see decedent speak to defendant.

 Appellant contends that the verdict and judgment are not supported by the evidence, which is said to show that the killing was justified on the theory of self-defense or at most to constitute manslaughter in the absence of the malice required by sections 187 and 188 of the Penal Code for a conviction of murder. We cannot so hold as a matter of law in view of the sharp conflict in the evidence (*People* v. *Garcia*, 2 Cal.2d 673, 678 [42 P.2d 1013]). The sufficiency of evidence of justification on the theory of self-defense or of mitigating circumstances reducing a homicide from murder to manslaughter are questions of fact for the jury, with which the appellate courts should interfere only in exceptional cases (*People* v. *Wells*, 10 Cal.2d 610, 620 et seq. [76 P.2d 493]; *People* v. *La Fleur*, 42 Cal.App.2d 50, 56 et seq. [108 P.2d 99]). When it is proved that defendant assaulted decedent with a dangerous weapon in a manner endangering life and resulting in death and the jury concludes that the evidence did not create in their minds a reasonable doubt whether

defendant's act may have been justified or its criminal character mitigated by the influence of passion (e. g., of terror, *People* v. *Logan,* 175 Cal. 45, 48, 49 [164 P. 1121]) then no further proof of malice or of intent to kill is required to support a verdict of guilty of second degree murder. Of that crime an actual intent to kill is not a necessary component and malice is implied from such assault in the absence of justifying or mitigating circumstances. (*People* v. *Doyell,* 48 Cal. 85, 95; *People* v. *Williams,* 73 Cal. 531, 534 [15 P. 97] ; *People* v. *Jones,* 160 Cal. 358, 370 [117 P. 176] ; *People* v. *Isby,* 30 Cal.2d 879, 889 [186 P.2d 405] ; *People* v. *Wilson,* 36 Cal.App. 589, 597 [172 P. 1116] ; *People* v. *Hubbard,* 64 Cal.App. 27, 34 [220 P. 315] ; *People* v. *Semone,* 140 Cal.App. 318, 323 [35 P.2d 379] ; *People* v. *Copley,* 32 Cal.App.2d 74, 76 [89 P.2d 160] ; *People* v. *Ross,* 34 Cal.App.2d 574, 578 [93 P.2d 1019] ; *People* v. *Butterfield,* 40 Cal.App.2d 725, 729 [105 P.2d 628] ; *People* v. *Campanella,* 46 Cal.App.2d 697, 701 [116 P.2d 633] ; Code Civ. Proc., § 1962, subd. 1; Pen. Code, § 7, subd. 4, and § 1105.)

In view of the conflicting evidence here presented we would have to uphold any conclusion to which the jury might have come, whether of justified homicide, manslaughter or second degree murder, except for possible prejudicial defects in the proceedings leading up to the verdict.

Appellant complains of the trial judge's failure to give certain proposed instructions with respect to self-defense. Respondent contends that it is extremely doubtful whether defendant should be heard as to failure to give any instruction because when at the close of his charge to the jury the judge asked counsel: ''Gentlemen, have I overlooked any subject of instruction to this jury?'' defendant's counsel replied, ''No, your Honor, thank you.'' Respondent contends that therefore the instructions requested but not given were not refused in the sense of section 1259, Penal Code, but only not given and that any possible error in failure to give them was invited or consented to by defendant. We do not agree with this contention. Section 1127, Penal Code, provides that if written charges are presented by a party the court must either give or refuse them and must indorse its decision on each. Section 1176, Penal Code, mentions also the possibility of modifying the charges presented. There are no other possibilities; a charge not given in its original or in modified form is refused. Only when a party withdraws a requested charge does the necessity of a decision by the court as to giving or refusing it

terminate. We are not willing to hold that the negative answer to the question of the judge whether he had overlooked any instruction is equivalent to a withdrawal of all instructions presented in writing, which had not been given. The answer does not show such intent. In itself there is nothing objectionable in the court's informal request to the parties to assist him in preventing omissions in his charge. Such conduct would however become a dangerous trap for the parties if we would hold that by their cooperation they assumed the responsibility for any omission that may have taken place.

 We have therefore reviewed the failure to give the proposed instructions. A careful comparison of the instructions refused and those given has convinced us that the subject matter of all defendant's proposed instructions which were not given was sufficiently covered by other parts of the charge except with respect to the following requested instruction: "One who has received information of threats against his life or person made by another is justified in acting more quickly and taking harsher measures for his own protection in the event of assault either actual or threatened, than would be a person who had not received such threats; and if in this case you believe from the evidence that the deceased made threats against the defendant and that the defendant because of such threats made previously to the transaction complained of, and communicated to the defendant, had reasonable cause to fear greater peril in the event of an altercation with the deceased than he would have otherwise, you are to take such facts and circumstances into your consideration in determining whether the defendant acted in a manner in which a reasonable man would act in protecting his own life or bodily safety."

It is conceded that no instruction was given with respect to the influence of antecedent threats on the right of self-defense. Where, as in this case, there is evidence tending to show the making of threats of death or great bodily harm by deceased against the defendant, which are relied on as influencing or justifying defendant's act, instruction on the law of this subject is proper (41 C.J.S., Homicide, § 382, p. 185) and if not covered a correct instruction on the subject proposed by one of the parties should be given. However, respondent argues that the proposed instruction does not state the law correctly. The instruction is taken literally from *People* v. *Graham*, 62 Cal.App. 758, 765 [217 P. 823], where it is held that said instruction, which was given, sufficiently

covered the subject of another instruction offered but refused. The same instruction was given at defendant's request in *People* v. *Bradfield*, 30 Cal.App. 721, 727 [159 P. 443], with slight modifications upheld in that case but not relevant here. Respondent's criticisms of the instruction seem without merit. Respondent mistakenly contends that the expression ''assault actual or threatened'' is ''tautological''; section 710, Penal Code, contains the expression ''a person who . . . *assaults or threatens to assault* another.'' Respondent further contends that the proposed instruction is incomplete in failing to state that previous threats alone without apparent design presently to carry them into effect do not justify a deadly assault and that the requirement of circumstances justifying a reasonable man in believing himself in immediate danger of bodily harm remain in effect notwithstanding threats. There are two answers to this contention. In the first place the proposed instruction would not tell the jury that under the circumstances mentioned the defendant would be justified in committing an assault with a deadly weapon in self-defense, but only that the jury was ''to take such facts and circumstances into . . . consideration in determining whether the defendant acted in a manner in which *a reasonable man* would act in protecting his own life or bodily safety.'' Moreover, the well known rule that each instruction need not contain a complete statement of the law but that it is sufficient that all instructions taken together correctly do so, applies obviously also to instructions proposed by a party and refused. Many more instructions on self-defense were proposed and many were given. The jury were instructed in the language of section 197, subdivision 3, Penal Code, that homicide is justifiable in self-defense ''when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, *and imminent danger of such design being accomplished.*'' The standard of the reasonable man both as to the fear of danger and the measures to be taken in defense was repeatedly called to their attention. To such instructions the one proposed on previous threats was a correct supplement that should have been given. Without a request of respondent to that effect there was no necessity to include a specific negative instruction that threats alone did not justify a deadly assault where the requirements for justification of a deadly assault were in general sufficiently covered so as to leave no doubt as to their application to this specific point.

The failure to give this instruction may have been prejudicial, particularly in connection with the giving of the following instruction: ". . . if, after a consideration of all of the testimony in the case there is a reasonable doubt in your minds whether the defendant was justified in acting in self-defense under the *immediate* circumstances surrounding the encounter, then I charge you that under your oaths you are bound to give the defendant the benefit of such doubt." It is true that such instruction did not necessarily exclude the previous threats from the consideration of the jury, as the influence of the threats on defendant's mind and on his evaluation of decedent's conduct on the fatal evening, was part of the immediate circumstances surrounding the encounter (compare *People* v. *Lee,* 34 Cal.App. 702, 711 [168 P. 694]). Nevertheless, as there could be no certainty that the jury would so understand the instruction and that the expression "immediate circumstances" would not divert their attention from the previous threats, the giving of the prepared instruction telling them to consider the previous threats was made more important. In a close case with strongly conflicting evidence as the one before us the refusal of the instruction requires reversal.

Appellant contends further that the trial was not had before an impartial jury and that the jury was guilty of prejudicial misconduct which contention is based, as it was at the motion for a new trial, on the affidavits of jurors. The affidavits state variously that the jurors discussed the punishment for second degree murder and manslaughter as a basis of their decision and that the foreman incorrectly informed them that the punishment for second degree murder was one to ten years; that one of the jurors during that discussion said: "What difference does it make how long he serves—he's a Mexican"; that another juror discussed the fact that her husband on one occasion took a knife from one of his Mexican farm hands and that that same juror studied the distinction between manslaughter and murder of the first and second degree in an encyclopedia, discussed it with the other jurors and told them that in the case before them no manslaughter could be found. It is argued that the demeanor of these two jurors shows prejudice against Mexicans, whereas they testified on voir dire that the fact that defendant was Mexican would not prejudice or influence the decision. The affidavits state further that the jury considered the personal knowledge of some of

them, not based on evidence in the case, that there were policemen in the neighborhood, whose protection defendant could have invoked. One of the affiants states that he himself made a statement to the other jurors about the presence of such policemen.

However, we need not go into the rather complex questions presented as to admissibility and effect of these affidavits as we have reached the conclusion that a new trial is required at any rate and it seems highly improbable that it would give rise to the assertion of claims of similar irregularities.

The judgment and order are reversed and the cause remanded for new trial.

Goodell, J., and Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 10, 1949. Shenk, J., and Edmonds, J., voted for a hearing.