[No. D013405. Fourth Dist., Div. One. Aug. 25, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE CHAVEZ GONZALES, Defendant and Appellant.

**COUNSEL**

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KREMER, P. J.**—Jorge Chavez Gonzales appeals a judgment convicting him of attempted murder (Pen. Code,[1] §§ 187, 664) while personally using a firearm and inflicting great bodily injury (§§ 12022.5, subd. (a), 12022.7). He also was convicted of assault with a firearm (§ 245, subd. (a)(2)) while personally using a firearm and of selling narcotics (Health & Saf. Code, § 11352) while personally armed with a firearm (§ 12022, subd. (c)). Gonzales challenges the jury's finding he was personally armed when engaging in that transaction. Because there was no evidence he had firearms on his person during the narcotics sale, Gonzales contends it was error for the court to instruct the jurors they could find he was personally armed upon evidence showing only that he had a firearm readily available for use. Gonzales also claims the court erred in refusing to give his requested special instruction tailored to his contention his firing a rifle at police officers as they burst through the front door of his residence was a reasonable reaction because he had been severely beaten and robbed by three white men who had kicked his front door open just three days earlier.

I

On April 30, 1990, a police informant made a controlled buy of heroin from Gonzales's residence under the supervision of San Diego Police Officer Jauregui. The following day a search warrant was issued for that residence

---

[1]All statutory references are to the Penal Code unless otherwise specified.

and on May 2, an undercover officer contacted Gonzales at the window of his residence in an unsuccessful effort to purchase narcotics. Gonzales told him to come back later. The following day the same undercover officer, monitored by other officers, bought a small quantity of heroin from Gonzales through the window of his residence. A few minutes later police officers at the front door gave an appropriate knock notice and then smashed in the door when they heard people running inside. As the door opened, the officers saw Gonzales facing them with his rifle raised to cheek level. Gonzales and Officer Jauregui fired simultaneously, Jauregui being wounded in the left hand and splinters from the door jam striking another officer. More shots were fired and eventually Gonzales was disabled.

Gonzales admits he sold narcotics. Gonzales also admits he fired his rifle at officers when they burst into his home. However, according to his theory of defense, until he was wounded Gonzales did not realize the persons who unexpectedly broke into his home were police officers; before then Gonzales had assumed they were robbers such as those who broke down his door and beat and robbed him at gunpoint three days earlier. Gonzales, who recently entered the country illegally, contends he did not want to risk deportation by attempting to obtain police protection for what he feared would be ongoing similar robbery attempts, but instead chose to resort to self-help by always having a loaded rifle close at hand. On this occasion, the loaded rifle was lying on top of the sofa where Gonzales claimed to have been sitting when the door burst open.

## II

A defendant found to be personally armed with a firearm while selling or offering to sell heroin is subject to a sentence enhancement of three, four or five years at the court's discretion. (§ 12022, subd. (c).) Here, the court imposed on Gonzales a middle term under Health and Safety Code section 11352, plus an enhancement under section 12022, subdivision (c). That subdivision—providing increased sentence enhancements for narcotics sellers personally armed with a firearm—is limited to drug traffickers. A more general provision is set forth in section 12022, subdivision (a)(1), which provides: "Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission or attempted commission of a felony shall . . . be punished by an additional term of one year . . . ." Gonzales contends the court erred in not instructing the jurors to find he was personally armed under section 12022, subdivision (c), *only if they found he had the firearm on his person.* Alternatively, Gonzales contends the court erred in denying his motion for new trial because the evidence did not show he had the firearm on his person.

Gonzales concedes case law defining section 12022, subdivision (a)(1)'s term "armed" permits a true finding where the weapon was not actually held by or on the defendant's person if the weapon was available for use should the need arise during the criminal activity. For example, in *People* v. *Wandick* (1991) 227 Cal.App.3d 918 [278 Cal.Rptr. 274], a firearm hanging on a bedpost and another in the drawer of a portable closet in a bedroom in the home where the defendant was arrested were sufficiently available to satisfy section 12022, subdivision (a)(1). The court in *Wandick* relied on analogous reasoning in cases involving the aggravated sentencing factor of "armed" under California Rules of Court, rule 421(a)(2). In *People* v. *Searle* (1989) 213 Cal.App.3d 1091 [261 Cal.Rptr. 898], the firearm was considered available for use when in the unlocked compartment in the back of a car from which a defendant was selling narcotics. In *People* v. *Garcia* (1986) 183 Cal.App.3d 335 [228 Cal.Rptr. 87], the court found the defendant was armed when committing the offense even though he may have temporarily divested himself of the firearm by leaving it in the garage when he entered the home to commit burglary.

Gonzales correctly notes none of the above cases—relied upon by the People—interprets the meaning of the phrase "personally armed" as used in section 12022, subdivision (c). Neither party offers legislative history showing the Legislature intended the term "personally armed" in section 12022, subdivision (c)—added by amendment in 1988—to be interpreted differently than the phrase "any person who is armed" in section 12022, subdivision (a)(1). However, the legislative intent underlying section 12022, subdivision (a)(1), is clear. That subdivision expressly provides: "This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, *whether or not such person is personally armed* with a firearm." (Italics added.) Thus, the section 12022, subdivision (a)(1), enhancement may be imposed upon a principal who is not personally armed if one of his coperpetrators is armed.

Gonzales asserts section 12022, subdivision (a)(1)'s express inclusion of firearm enhancements for principals who are not themselves personally armed makes inapposite here the holdings of *People* v. *Wandick, supra,* 227 Cal.App.3d 918, and the cases upon which it relies. However, such assertion is flawed. Neither *Wandick* nor any of those other decisions bases its holding on vicarious arming. In each, the crimes were committed by a single defendant and the phrase interpreted was "any person who is armed with a firearm." The meaning of that phrase as interpreted in those single-defendant cases is identical to the meaning of the term "personally armed" as used in section 12022, subdivision (c). Section 12022, subdivision (c), simply clarifies that its more severe enhancement may not be vicariously imposed upon

a defendant because a coprincipal was armed. Stated otherwise, a true finding under section 12022, subdivision (c), requires proof the defendant personally had a firearm "at the ready."

Here the evidence was clear. While selling heroin Gonzales had his loaded firearm readily available for immediate access. Gonzales received his section 12022, subdivision (c), enhancement the old fashioned way: he personally earned it.[2]

## III

Gonzales next complains of the trial court refusing to give his requested instruction tailored to his defense for using the firearm when the officers burst through his front door. The proposed instruction read: "One who has been previously physically assaulted by another person is justified in acting more quickly and taking harsher measures for his own protection in the event of an actual or threatened assault that [*sic*] would be a person who had not received such prior assaults. If in this case you believe from the evidence that individuals in a similar situation previously assaulted the defendant and that the defendant, because of such prior assaults had reasonable cause to fear greater peril in the event of an altercation with these same individuals than he would have otherwise, you must take such prior assaults into consideration in determining whether the defendant acted in a manner in which a reasonable person would act in protecting his own life or bodily safety."

We disagree with Gonzales's contention of prejudicial error because the court had no duty to give an incomplete and misleading instruction and because error, if any, was harmless.

It is well settled a defendant asserting self-defense is entitled to an instruction on the effect of antecedent threats or assaults *by the victim* on the

---

[2] In support of his motion for new trial, Gonzales submitted a transcript from a case in which Municipal Court Judge Lawrence Stirling, a former state senator, succumbed to the temptation of providing his own view of legislative history when faced with interpreting section 12022, subdivision (c). Judge Stirling stated: "Let me point out here that the law is new. Its under Senate Bill 407 carried by Senator Stirling when he was there, . . . I have to agree . . . when the Legislature said 'actually armed, personally armed,' they made—meant 'personally' and not 'immediately available.' " The minimal evidentiary weight of similar post-enactment statements of intent was discussed at length in *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1137-1138 [203 Cal.Rptr. 886]. Because it is clear the Legislature enacted section 12022, subdivision (c), to increase protection for narcotics undercover officers forced to deal with narcotics traffickers who are often heavily armed, it is incongruous to believe it did not intend to extend whatever deterrents there may be in section 12022, subdivision (c), to those instances where dealers from automobiles place their weapons on the seats beside them or otherwise within arm's reach.

reasonableness of defendant's conduct (*People* v. *Moore* (1954) 43 Cal.2d 517, 527-528 [275 Cal.Rptr. 485]; *People* v. *Pena* (1984) 151 Cal.App.3d 462, 475 [198 Cal.Rptr. 819]; *People* v. *Bush* (1978) 84 Cal.App.3d 294, 303-304 [148 Cal.Rptr. 430]; *People* v. *Torres* (1949) 94 Cal.App.2d 146, 151-154 [210 Cal.Rptr. 324]; *People* v. *Graham* (1923) 62 Cal.App. 758, 765 [217 P. 823]; *People* v. *Bradfield* (1916) 30 Cal.App. 721, 727 [159 P. 443]). However, none of those cases involved the fact situation here (an antecedent assault by one party and a subsequent assault by another) and none suggests language appropriate for such situation. Even assuming there should be no legal distinction between the two situations any instruction should be phrased to apply to the facts at hand and avoid confusion. The instruction tendered did neither.

As drafted, the instruction described the single assailant-defendant situation referring only to "an altercation with these same individuals." The proposed instruction gave no guidance regarding the situations Gonzales faced: assaults by different individuals. Worse: the instruction was misleading. If the jury, as it might, read the instruction's second paragraph to be factually inapplicable because the same individuals were not involved in both assaults, the first paragraph could be read to state that an individual who has been previously assaulted is justified in taking harsher measures for his own protection *as to all the world* than would a person who had not been so assaulted. None of the cases cited stands for the proposition that one previously assaulted is entitled, for that reason, to shoot first and ask questions later in all situations.

The tendered instruction should have included language requiring the jury to find Gonzales in fact believed the police officers breaking through his door were the same individuals who had previously assaulted him. It did not. As a court has no duty to correct a proposed instruction which is partially incorrect and must avoid giving instructions which would tend to confuse the jury (*People* v. *Hall* (1984) 157 Cal.App.3d 538, 546 [223 Cal.Rptr. 267]), there was no error in refusing this instruction.

Additionally, if there was error, it was harmless. Both the defense counsel and the prosecutor thoroughly aired this subject in argument. Defense counsel repeatedly argued the prior assault colored Gonzales's perception of the second and justified his quick response. The prosecutor did not dispute defense counsel's logic but attacked the argument's premises by questioning whether the first assault ever occurred and asserting Gonzales must have known the second assailants were police given the shouted warnings in English and Spanish and the officers' clothing.

The concept at issue here is closer to rough and ready common sense than abstract legal principle. It is also fully consistent with the otherwise complete self-defense instructions given by the court.[3] It is unlikely the jury hearing the evidence, the instructions given and the argument of counsel would have failed to give the defendant's position full consideration.

DISPOSITION

The judgment is affirmed.

Froehlich, J., concurred.

**WORK, J.**—I concur fully in the court's analysis and conclusion in part II. However, although I concur in the result reached in part III, I find its analysis too narrow for the following reasons.

Unlike the majority's language implies, I am satisfied the rationale which supports the "once bitten, twice shy" instruction approved in *People* v. *Moore* (1954) 43 Cal.2d 517 [275 P.2d 485] and other decisions cited, applies equally to law abiding persons who react to what appears to be a surprise violent assault under circumstances similar to an earlier one in which they suffered actual or threats of substantial bodily harm. For instance, elderly pensioners who live in fear each month when they cash their Social Security checks, because they have been assaulted and terrorized regularly in their boarding house rooms by unknown persons bursting through their doors. There is no reason to deny such a victim this defense merely for lack of an allegation the perceived attackers were believed to be the specific bandits who had committed previous assaults, rather than another of the roving bands of criminals who prey on elderly targets of opportunity.

However, there is no legal justification or societal benefit in permitting Gonzales, whose vulnerability to assault arises solely from his choosing to engage in criminal activities, to employ this defense. Gonzales previously had been assaulted and robbed because he possessed narcotics and money generated from sales of illegal drugs. He continued to engage in these activities. To the extent he truly believed he remained a potential target of future assaults, it was because he chose to continue this illegal activity. On

---

[3]Instructions informing the jury of a right to self-defense if Gonzales believed he was in peril included justifiable homicide in self-defense (CALJIC No. 5.12), charge of murder—burden of proof regarding justification or excuse (CALJIC No. 5.15), resisting an intruder upon one's property (CALJIC No. 5.42), self-defense—actual danger not necessary (CALJIC No. 5.51), honest but unreasonable belief in the necessity to defend—manslaughter (CALJIC No. 5.17), and self-defense against assault (CALJIC No. 5.30).

these facts Gonzales was not entitled to an instruction on the reasonableness of his violent reaction to the police intrusion.

A petition for a rehearing was denied September 10, 1992.