Filed 10/19/15  P. v. Alamos CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR ANTONIO ALAMOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B252679<br>(Super. Ct. No. VA102455)<br>(Los Angeles County) |

Appellant was charged with murder.  (Pen. Code, § 187, subd. (a).)[1] Two weeks after the information was filed, the trial court declared a doubt that he was competent to stand trial, suspended the criminal proceedings, and appointed two mental health experts, Dr. Timothy Collister and Dr. Kory Knapke, to examine him.  (§§ 1368, 1369, subd. (a).)  Based on their recommendations, the trial court found him incompetent and committed him to the Department of Mental Health for treatment.  (§ 1370, subd. (a)(1)(B).)  After he spent seven months at Patton State Hospital, the trial court found that his competency had been restored and resumed the proceedings.  (§§ 1370, subd. (b)(1), 1372.)

---

[1] All further statutory references are to the Penal Code.

A jury convicted appellant of first degree murder and found true allegations that he personally used a firearm. (§ 12022.53, subds. (b), (c), (d).) The trial court declared a mistrial on a gang allegation (§ 186.22, subd. (b)(1)(C)) because the jury could not reach a verdict. Appellant was sentenced to 50 years to life in state prison with 1,026 days of presentence custody credit.

Appellant contends that (1) his self-incriminating statements to the police were involuntary and defense counsel was ineffective for not challenging their admission; (2) defense counsel was ineffective for not introducing evidence of his mental condition; (3) the trial court erred by not providing certain instructions on self-defense sua sponte and defense counsel was ineffective for not requesting them; and (4) insufficient evidence supports his conviction. We affirm.

FACTS

Jesse Garcia, his girlfriend Ana Hernandez, and his brother Abel left their house to recycle cans. They encountered appellant, who was walking with two companions. Abel Garcia recognized appellant as "Brownie" from the Morton Town Stoners gang. He told this to Jesse, who was a member of the Florencia gang, Morton Town's longtime rival.

Appellant and Jesse Garcia "mad-dogged" each other.[2] Garcia threw some gang signs,[3] retrieved a crowbar from his house, and chased appellant and his companions down the street. Afterwards, he rejoined Hernandez and his brother at home.

About an hour later, Garcia and Hernandez left for the store. Appellant came out of a house across the street. He yelled at Garcia, "Where you from?" Garcia crossed the street and said, "Don't come to my neighborhood and disrespect me in front of my girlfriend." Appellant pulled out a gun and pointed it

---

[2] According to Abel Garcia, this meant they looked at each other in anger.

[3] Unless otherwise specified, "Garcia" refers to Jesse Garcia.

at Garcia. Garcia said, "Shoot me. If you are going to do it, do it." Appellant shot him five times and ran off. Garcia died from the gunshot wounds.

DISCUSSION

*Voluntariness of Statements to the Police*

In a custodial interview that was played for the jury, appellant confessed to shooting his gun during the second confrontation with Garcia and largely corroborated the other witnesses' version of events.[4] Appellant contends he did not validly waive his right to remain silent and that, due to his intellectual and cognitive deficits, his confession was involuntary. Therefore, he argues, his trial counsel was ineffective for not challenging the interview's admission.

"[N]ormally a claim of ineffective assistance of counsel is appropriately raised in a petition for writ of habeas corpus [citation], where relevant facts and circumstances not reflected in the record on appeal, such as counsel's reasons for pursuing or not pursuing a particular trial strategy, can be brought to light to inform the two-pronged inquiry of whether counsel's 'representation fell below an objective standard of reasonableness,' and whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 111.)

We cannot evaluate appellant's claim because the record is inconclusive and incomplete. Appellant argues that he told the police, "No," he did not understand his *Miranda* rights,[5] "[t]hree separate times . . . until Cochran told [him] that he had to say 'Yes,'" and thereafter, "following the instruction, [he] said

---

[4] Appellant did not actually admit to shooting Garcia. At first, he told the police he was aiming the gun at Garcia when he heard a gunshot on one side, so he "turned around and started shooting that way." Later, he told the police that when Garcia approached him before the shooting, he was "scared" and "lost total control": "I didn't see nothing no more and then I hear pop and a pop and a pop and that was it, sir. I don't remember nothing then."

[5] (*Miranda v. Arizona* (1966) 384 U.S. 436.)

3

'yes' to everything he was asked." In fact, Sergeant Cochran did not instruct appellant to say "yes." He told appellant that he had to say "it": "[Y]ou have the right to remain silent, which means you don't have to talk to me, okay? You understand that. Yes? I need—I need you to say it." Although appellant's coercive interpretation of this exchange is possible, respondent's non-coercive interpretation—that appellant was nodding his head to indicate agreement and Sergeant Cochran was trying to get him to verbalize his response for the record—is at least as likely given that Deputy Blagg had already told appellant, "You have to answer out loud."

Moreover, we cannot assess the extent to which appellant's claimed mental deficit impacted his comprehension when the police explained his *Miranda* rights because it was never tested in the trial court. Although appellant told Dr. Collister he did not understand his *Miranda* rights when given to him by the police five months earlier, he was merely answering "no" in response to a leading question. His responses to the open-ended questions that preceded it suggested that he did have a basic understanding of his rights. He explained that the right to remain silent means "I'm not suppose[d] to speak," which is important because "whatever I said . . . they'll bring it up in court" as evidence that "could be against you." More importantly, the prosecution was never given a chance to challenge Dr. Collister's conclusion that appellant did not understand the *Miranda* warnings by having its own expert examine him or questioning him under oath. Accordingly, we decline to consider appellant's contention on appeal.

*Evidence of Appellant's Mental Condition*

Appellant also contends that his trial counsel was ineffective for not presenting evidence of his mental condition. In particular, he cites evidence from Dr. Collister's report that he has posttraumatic stress disorder (PTSD) resulting from a nearly fatal gang shooting when he was 15 years old and other psychosocial stressors and traumas in his childhood. He reported suffering two to three flashbacks per day in which he hears the "pop" from the gang shooting. Dr.

4

Collister recommended a second evaluation by Dr. Nora Baladerian "to explore in greater depth the nature and depth of the [PTSD]."

It is impossible to determine on this record whether defense counsel was unreasonable in deciding not to present testimony regarding appellant's mental condition. We do not know, for instance, whether defense counsel ever followed up with Dr. Baladerian and, if so, what further evaluation of appellant's potential PTSD yielded. Neither Dr. Collister nor any of appellant's other evaluators theorized a linkage between his victimization at age 15 in a gang shooting, his reported flashbacks, and his statement to the police that he heard a "pop" before he began shooting, that would support an unreasonable self-defense theory. We are left only to speculate about the viability of such a defense and counsel's wisdom in not pursuing it. This we cannot do. When, as here, "a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

*Jury Instructions on Self Defense*

Appellant contends that the trial court violated his federal and state due process rights by failing to instruct the jury sua sponte with three jury instructions on self-defense—CALJIC Nos. 5.50.1 (Prior Threats/Assaults by Victim), 5.51 (Actual Danger Not Necessary), and 5.15 (Burden of Proof re Justification or Excuse)—and that defense counsel rendered ineffective assistance by not requesting them. We review assertions of instructional error de novo. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

5

*CALJIC No. 5.50.1*[6]

The omitted instruction on prior threats is a pinpoint instruction which the trial court was not required to deliver absent a request by counsel. (*People v. Garvin* (2003) 110 Cal.App.4th 484, 488-489.) The trial court was obligated to instruct only on the basic principles of self-defense, which it did here by using the standard CALJIC instructions on self-defense, including CALJIC Nos. 5.12 (Justifiable Homicide in Self-Defense) and 5.17 (Actual but Unreasonable Belief in Necessity to Defend—Manslaughter). (*People v. Garvin*, at p. 489.)

Appellant was not prejudiced by defense counsel's claimed failure to request the pinpoint instruction on prior threats because "[b]oth the defense counsel and the prosecutor thoroughly aired this subject in argument. Defense counsel repeatedly argued the prior assault colored [appellant's] perception of the second . . . ." (*People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1664.) In response to this argument, the prosecutor attacked its factual premise, questioning why appellant did not "corroborate his statement that he was so upset and so in fear for his life after the crowbar incident." "The concept at issue here is closer to rough and ready common sense than abstract legal principle. It is also fully consistent with the otherwise complete self-defense instructions given by the court. [Fn. omitted.] It is unlikely the jury hearing the evidence, the instructions given and the argument of counsel would have failed to give the defendant's position full consideration." (*People v. Gonzales*, at p. 1665.)

---

[6] "Evidence has been presented that on [a] prior occasion[s] the alleged victim [threatened] [or] [assaulted] [or participated in an assault or threat of physical harm upon] the defendant. If you find that this evidence is true, you may consider that evidence on the issues of whether the defendant actually and reasonably believed [his] [her] life or physical safety was endangered at the time of the commission of the alleged crime. [¶] In addition, a person whose life or safety has been previously threatened, or assaulted by [another] [others] is justified in acting more quickly and taking harsher measures for self protection from an assault by [that person] [those persons], than would a person who had not received threats from or previously been assaulted by the same person [or persons]." (CALJIC No. 5.50.1.)

## CALJIC No. 5.51[7]

Appellant argues that CALJIC No. 5.51 was necessary because CALJIC No. 5.12 "does not directly address the concept that actual danger is not necessary to justify self defense." We disagree. As appellant concedes, the use note in CALJIC No. 5.51 instructs courts to use CALJIC No. 5.12 "and not this instruction" when the defense is justifiable homicide. When, as here, CALJIC No. 5.12 is given, CALJIC No. 5.51 is "superfluous." (*People v. Mayfield* (1997) 14 Cal.4th 668, 781, abrogated on other grounds by *People v. Scott* (2015) 61 Cal.4th 363.)

## CALJIC No. 5.15[8]

Although the trial court did not instruct with CALJIC No. 5.15, it provided all of the relevant legal principles in other instructions. In addition to defining justifiable homicide in CALJIC No. 5.12, the trial court instructed the jury that (1) justifiable homicide is lawful (CALJIC No. 8.00); (2) one of the elements of murder is an unlawful killing (CALJIC No. 8.10); (3) the burden is on the People to prove beyond a reasonable doubt each of the elements of murder (CALJIC No. 8.50); and (4) if there is reasonable doubt about guilt, appellant is entitled to a verdict of not guilty (CALJIC No. 2.90). In closing argument, defense counsel reminded the jury that the prosecution has the burden of proof beyond a reasonable

---

[7] "Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in [his] [her] mind, as a reasonable person, an actual belief and fear that [he] [she] is about to suffer bodily injury, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing [himself] [herself] in like danger, and if that individual so confronted acts in self-defense upon these appearances and from that fear and actual beliefs, the person's right of self-defense is the same whether the danger is real or merely apparent." (CALJIC No. 5.51.)

[8] "Upon a trial of a charge of murder, a killing is lawful if it was [justifiable] [excusable]. The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was unlawful, that is, not [justifiable] [excusable]. If you have a reasonable doubt that the homicide was unlawful, you must find the defendant not guilty." (CALJIC No. 5.15.)

7

doubt and, in rebuttal, the prosecutor stated, "that is absolutely correct." In light of the trial court's additional instructions and the argument of counsel, any error from the omission of CALJIC No. 5.15 was harmless and appellant was not prejudiced by defense counsel's failure to request it. (Cf. *People v. Romero* (2007) 149 Cal.App.4th 29, 42 ["The trial court properly refused appellant's burden of proof instruction as duplicative of what was covered in the self-defense and burden of proof instructions the trial court gave"].)

*Sufficiency of the Evidence to Negate Self-Defense*

Appellant challenges the sufficiency of the evidence that the homicide was neither justifiable nor imperfect self-defense. In reviewing claims of insufficient evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Maciel* (2013) 57 Cal.4th 482, 514-515.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) We accept the logical inferences that the jury might have drawn from the evidence even if we would have concluded otherwise. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) If the trier of fact's findings are reasonably justified by the circumstances, the opinion of the reviewing court that a contrary finding might also reasonably be reconciled with the circumstances does not warrant reversing the judgment. (*People v. Jones* (2013) 57 Cal.4th 899, 961.)

Overwhelming evidence supports the jury's finding that appellant was not acting in reasonable or unreasonable self-defense. After being chased by Garcia, appellant went to his auntie's house, where he was living, and armed himself with a gun. While this act is by itself consistent with appellant's preparation to defend himself against an anticipated future attack, his subsequent behavior is consistent only with a plan to retaliate. In the police interview, appellant's version of events was far-fetched. He claimed to have been scared, yet he did not stay at his

8

auntie's house or go to his mother's house, his original destination, by another route. Instead, he went back to the place where he had encountered Garcia in order to talk with 10 friends living on that block whom he saw every day but none of whose names he could recall. When he arrived, before he could speak with his friends, Garcia "[came] out of nowhere."

The only explanation is that appellant planned to confront Garcia and waited for him across the street. When Garcia left to go to the store, appellant yelled at him, "Where you from?" According to the gang expert, this question indicated that appellant was from a gang and signaled that there was "going to be a violent encounter because it's a confrontation of sort[s]." When Garcia crossed the street, appellant did not immediately shoot him. He raised the gun and aimed it at Garcia long enough for him to say, "Shoot me. If you are going to do it, do it." This evidence was more than sufficient for the jury to conclude that appellant deliberately sought out Garcia to kill him rather than acted in self-defense.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.


9

Michael A. Cowell, Judge

Superior Court County of Los Angeles

_____

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.